### CHARLES E. HIRES CO. v. VILLEPIGUE.

(Circuit Court of Appeals, Eighth Circuit. May 14, 1912.)

#### No. 3,649.

TRADE-MARKS AND TRADE-NAMES (§ 69*)—UNFAIR COMPETITION—INJUNCTION.
    To authorize the granting of an injunction to restrain unfair competition in trade, there must be evidence which satisfies the court that there was a wrongful intent in fact, or justifies the inference from the inevitable consequences of the act complained of.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 80; Dec. Dig. § 69.*
    Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bro., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit in equity by the Charles E. Hires Company against August F. Villepigue. Decree for defendant, and complainant appeals. Affirmed.

Oliver Mitchell (Mitchell, Chadwick & Kent, on the brief), for appellant.

Shelby C. Brown and Bruce H. Grigsby (Brown & Grigsby, on the brief), for appellee.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. This action was instituted to restrain what is alleged to have been fraudulent and unfair business competition in the use by appellee of appellant's trade-name. The Circuit Court on final hearing dismissed the bill. The facts which in our judgment compel the affirmation of the judgment of dismissal appear in the record as follows:

From 1877 to 1890 Charles E. Hires was engaged in the manufacture of root beer preparations. In 1890 he sold his business, together with formulas, to the Charles E. Hires Company, the appellant herein. Since 1890 the appellant has been engaged in the man-

---

ufacture of extracts for making beverages, and the manufacture of a beverage called "Hires." The word "Hires" was registered by the appellant as a trade-mark on June 26, 1906, in the United States Patent Office. The class of merchandise upon which said trade-mark was claimed to be used was root beer, root beer extract, and the dried ingredients for making root beer.

In 1904 the appellant put upon the market, sold, and advertised a fountain syrup for making root beer. It has spent $100,000 a year in advertising this syrup. The annual sales have amounted to more than $500,000. In 1888 Charles E. Hires put upon the market a preparation in liquid form for making root beer. This preparation was called "Hires Improved Root Beer." One package was sufficient to make five gallons of beer. Subsequently the name of this package in liquid form was changed to "Hires Household Extract," and is still sold as such.

In 1909 the appellee was a dispenser of soft drinks at Chanute, Kan. He advertised and sold what he called "Hires Root Beer." This beer was purchased in tanks from Charles W. Brown, proprietor of the Brown Pharmacy, at said town of Chanute. Brown made the beer that he sold to appellee from Hires Improved Root Beer package hereinbefore described. In a circular issued with each package of Hires Improved Root Beer, giving information as to the preparation of root beer from the liquid extract, the preparation when made was designated "Hires Root Beer."

The appellant claims that, while any person might purchase a package of Hires Improved Root Beer or Household Extract and do what he pleased with the same, he could not make beer from the same and call it "Hires." We do not stop to consider the validity of this claim, or as to whether, under the evidence, appellee is shown to have been in business competition with the appellant. We are satisfied that the judgment below must be affirmed for the following reasons:

The appellee never knew that the appellant had any objection to his advertising and selling the beer which he sold as Hires Root Beer until he was served with process in this action, and when so notified he immediately ceased selling. He knew how the beer was made by Brown, but had no knowledge that would lead any prudent person to suspect that the beer which appellant in his circular called Hires Improved Root Beer could not be so called by him. We apprehend that, if appellee had sold root beer made from appellant's fountain syrup, there would have been no trouble.

This is not a case of infringement of trade-mark, but to restrain unfair business competition; in other words, to restrain appellee from selling to the public under appellant's trade-name a root beer that is not in fact that of appellant. In this class of cases, before a bill for injunction will be sustained, there must be evidence that will satisfy the court that there was a wrongful intent in fact, or justify the inference from the inevitable consequences of the act complained of. Elgin National Watch Company v. Illinois Watch Company, 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 265; McLean v. Fleming, 96

U. S. 245, 24 L. Ed. 828; Lawrence Mfg. Company v. Tennessee Mfg. Company, 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Day v. Webster, 23 App. Div. 601, 49 N. Y. Supp. 314; Goodman v. Bohls, 3 Tex. Civ. App. 183, 22 S. W. 11; N. K. Fairbank Co. v. Windsor, 124 Fed. 200, 61 C. C. A. 233; Faber v. Faber (C. C.) 124 Fed. 603; Lamont, Corliss & Company v. Hershey (C. C.) 140 Fed. 763.

In the case at bar there is no evidence that the appellee intended in any way to defraud the appellant, and no such inference can be drawn from the sale itself. The appellee ceased from doing the act complained of as soon as he knew that the appellant objected.

Decree affirmed.